*Rutland,*
*January,*
*1824.*

DANIEL SMITH and others *vs.* MEACHAM.

Where the proprietors of a town, at a proprietors' meeting make a division of the town into severalty, by voting to the persons claiming the different rights, certain lots in lieu of their drafts, such votes are no evidence of title, not even *prima facie* evidence of title as against each other.

THIS was an action of ejectment for a lot of land in Rutland, containing sixty acres, laid as a third division to the rights of John Dandley, Oliver Colborn and Thomas Blanchard. On trial upon the general issue, at February term, 1823, it appeared in evidence, that in the year 1793 the proprietors of said Rutland made a division of said town into severalty, as appeared by the records of the proprietors' meetings and plan of the allotment.—That said division was not made agreeably to any existing law, but had been acquiesced in, and that the lands in the town are still holden under said division. It further appeared that most of the lots in town were voted to the proprietors in lieu of their drafts. And that at a meeting of the proprietors holden on the 13th day of November, 1793, they voted to Capt. John Smith, ancestor of the plaintiffs, the lot in question, as a third division of the rights of John Dandley, Oliver Colborn and Thomas Blanchard, containing eighty acres, twenty acres to each of said rights.—That the said proprietors, at the same meeting, voted to Col. James Mead Lot No. —— as a third division of the right of John Melvin, containing sixty acres, and lying south of and adjoining the aforesaid lot voted to said Smith.—That the defendant claimed the last mentioned lot by virtue of a deed from said James Mead, bounding said lot north on said lot of John Smith.—That the defendant exhibited no title or claim to the land in question, unless it was contained within said eighty acre lot, which he had purchased of James Mead, but did claim a part of the sixty acre lot, being the land in question, as included in his said eighty acre lot. It further appeared that the plaintiffs were the heirs at law of the said John Smith, deceased.

The plaintiffs insisted that upon the aforesaid evidence they were entitled to recover against the defendant the land described in his declaration, if the Jury should find it to be included within the boundaries of said lot voted to John Smith, and not in the said lot voted to James Mead.

The Court decided that the plaintiffs were not entitled to recover, as they had shewn no title to said land, either by deed from the original proprietors, by the statute of limitations, or by prior occupancy.           Verdict for the defendant.

*Rutland,*
*January,*
*1824.*

Smith et al.
*vs.*
Meacham.

The plaintiff excepted to the opinion of the Court, and filed a motion for a new trial—on which the cause came on to be heard at the present term.

*D. Chipman* for the plaintiffs. To entitle the plaintiffs to recover in this case, it is necessary for them to make out a good title against the defendant—not an absolute good title against all others. From the facts admitted in the case there is room to suppose that there may be a better title in some third person. As in the case where both plaintiff and defendant claim title from the same source, the plaintiff recovers if he show the best title from the common source, yet there is no greater probability that the plaintiff's title is good because the defendant claims from the same source—nay, not so great, for in most cases the title is rendered more suspicious. But the defendant's claim itself renders the plaintiff's title, imperfect in itself, good against the defendant. So in this case, although the plaintiffs have not shewn a title in themselves either by deed from the original proprietor, by the statute of limitations, or by prior occupancy, yet we hope it will appear to the Court that we have shewn in them a title good against the defendant; that they have a legal right to recover and hold the land against him.

Were this a solitary case, the questions arising in it would be quite unimportant; but when we consider that great numbers in the State, and a great portion of the inhabitants of this town stand in the same relation to each other respecting their possessions, as do the parties before the Court, the case assumes a high degree of importance.

So long a time had elapsed between the grants of these townships by the Governor of New-Hampshire, and the settlements under those grants, and no office for recording of deeds until after the organization of this government, that speculators found that they could sell lands as well without purchasing them, as to pay their money for them; hence a great portion of the settlers went into possession without a valid title. True, a great portion of them are secured in their possessions by the statute of limitations. But in

54

Rutland,
January,
1821.
Smith et al.
vs.
Meacham,

cases like the present, where the dispute is in relation to boundaries, the statute affords no security except the disputed ground has been actually improved fifteen years. In this case the plaintiffs and defendant disagreed, in relation to the line between their two lots. The plaintiffs left their lot unimproved and kept it for a timber-lot; the defendant lived on his lot, and within a few years past extended his improvements on to the plaintiffs' lot across the disputed ground. The plaintiffs brought the present action to settle that dispute; the defendant as appears by the case never pretended any claim to the plaintiffs' lot, but claimed the land in question as within the boundaries of his lot which he purchased of Mead. They both come to Court with their witnesses each to establish the line to which he claimed. But this question was put at rest and the defendant left in possession, because the plaintiffs could at this late day trace no title from the New-Hampshire proprietors to John Smith. Indeed it does not appear that either party has any title or claim to the land in question, except what was derived from the votes of the proprietors assigning the plaintiffs' lot to John Smith and the defendant's lot to James Mead—a claim which until this time has been undisputed. It remains then to inquire into the validity of this claim as between the two parties.

When this proprietors' meeting was holden, no one of the original grantees could have been present; they had all passed off the stage, and others held their rights by descent, purchase, &c. When, therefore, the meeting was warned, and the proprietors assembled, how could they know each other, or their titles to their rights respectively? And who, by virtue of his title, had a right to vote in the meeting as a proprietor, as having an interest in the common property?—Those, and those only, who at that day could exhibit satisfactory evidence of title to one or more rights in the town. Now we will suppose that every individual right in the town was thus represented at the meeting, and the proprietors proceeded to make a survey and allotment, and to agree what particular lot each one should have, and to vote the lots accordingly. And suppose this division became valid by long acquiescence, or rather take it to be a legal division, when made, as clearly in point of law it would be.—One of these proprietors goes into possession of his own lot under the proceedings of the proprietors, but not content with that,

enters upon an adjoining lot, assigned to another proprietor, with-out any pretence of claim. When prosecuted for the trespass by the proprietor to whom the lot was assigned, could he be permitted to controvert the plaintiff's title to the right to which the lot had been assigned, which the proprietors, of which he the defendant was one, had expressly admitted?—We think not. It is very obvious that such vote of proprietors amounts to such admission. When the proprietors voted that James Mead should have the eighty acre lot as a third division to the right of John Melvin, it was a direct admission that James Mead was the owner of that right. There was the same admission of ownership in John Smith, when they voted to him the sixty acre lot.

*Rutland,*
*January,*
*1824.*

Smith et al.
*vs.*
Meacham.

It remains then only to shew that the case before the Court is a case the same in substance as the case stated; so plainly so, that it seems hardly necessary to premise, that every presumption is to be raised in support of that which is obviously just and right, which shall confine the parties in this case, to the matter of contention which brought them into this Court—a dispute in relation to boundaries. And we cannot think it is presuming too much in this case, to say that every proprietor was present at the meeting, and gave his assent to every vote which was passed; but this is unnecessary. It is enough that James Mead and John Smith, under whom the parties claim, were present, and thus acting at the meeting. John Smith admitted that James Mead was the owner of the right of John Melvin, and agreed that he should have the eighty acre lot as a third division to that right, and James Mead admitted that John Smith was the owner of the said three rights claimed by him, and agreed that he should hold the sixty acre lot on the third division of these rights. Surely this gave to each a valid title to his lot as against the other; although a third person might show a paramount title to all the rights above named, and oust them both. But the plaintiffs, as heirs of John Smith, and the defendant grantee of James Mead, stand in the same relation respecting these lots as did John Smith and James Mead. Thus we trust it has been shown, that law and justice unite in calling for a new trial in this case.

*Page* for the defendant. This is the first attempt that I have ever known made by a plaintiff in ejectment, to recover without ti-

*Rutland,*
January,
1824.

Smith et al.
*vs.*
Meacham.

tle, or rather, when he admitted himself that he had no title to any part of the premises. The plaintiff admits that he has no paper title to the lot in question, or to any land in the town of Rutland, or to any undivided share of any land in the town, and that he has never been in possession of the lot in question, but insists that he has acquired a title simply by a *division* of lands in the town in which he had no previous interest. This is a mode of acquiring a title to property, as new as it is convenient. The gentleman, I presume, would extend his new discover'd principle to personal property also. I hope he may not extend it to mine, but he may on his principle—finding ten bushels of wheat in *my bin, divide,* and take five of it, and so make a division *in fact,* as in the present case. I call on him for the wheat.—He has none of my wheat—he has a clear and indisputable title to it—How came the wheat yours? you took it out of my bin.—I did which I can prove, and I can also prove that I made a *division of it, a just and equal one too;* for I took in the division one equal moiety of it—took five bushels and left five, and this in law gives me a title. We are wholly unable to discover any other principle on which the plaintiffs are entitled to recover in the present action.

SKINNER Ch. J. delivered the opinion of the Court. The material facts in the case allowed by the Judge are, that by the records of the proprietors and a plan of the allotment, it appeared a division of the town of Rutland was made into severalty in the year 1793. This division was not made conformably to the statute, but is proved to have been ever since acquiesced in by the proprietors. The lands in the town are still holden under this division; and most of the lots were voted to the proprietors in lieu of their drafts. The record shows, that at a meeting of the proprietors in that year, they voted to James Mead, under whom the defendant claims, 80 acres upon the right of John Melvin on the 3d division; and also to John Smith, under whom the plaintiffs claim, adjoining thereto, 60 acres, that is, 20 acres to each of the rights of John Dandly, Thomas Blanchard, and Oliver Colburn, on the 3d division. This action is brought for the 60 acres. No right is claimed by either party to the land in question through any conveyance from the original proprietor. The deed from Mead describes the 80 acres as bounded north by the lot of Smith; and the defendant claimed the

land in question as part of the 80 acre lot.    The Court directed a <span>*Rutland,*</span> verdict for the defendant, the plaintiffs having failed to show a title <span>*January,*</span> by deed from the original proprietor, or by the statute of limitations, *or by a prior occupancy.*

<span>*Smith et al.*</span>
<span>*vs.*</span>
<span>Meacham.</span>

The language of the Court is a correct exposition of the law as to what is required of the plaintiff in ordinary cases to entitle him to recover in ejectment.    But in this case it is insisted by the plaintiffs' counsel, that from the facts shown in evidence the defendant is concluded by the division, and is estopped from denying the plaintiffs' title.    In recurring to the facts contained in the case, from which it may be supposed the plaintiff is concluded, the first inquiry is, as to the effect of the record of the proprietors on his rights.    The object to be effected by a division, whether made conformably to the statute or not, is to sever that which was before in common.    An actual division and allotment, made and approved by persons who are *not* proprietors, can have no effect upon the rights of those who are.    If a majority of those who are proprietors should make, approve of, and acquiesce in such division, it can, at most, have no other effect upon the rights of the minority, than to sever and locate their rights.    If the proprietors had the power to sanction a division, which was not made according to the requisitions of the statute, they had no authority to decide a question of title; they could not divest a proprietor of his right, or give a title that did not before exist.    There is nothing in the law that authorizes the proprietors to decide a question of title; it may therefore be likened to a proceeding *coram non judice,* by which no one is estopped.    The records of the acts of the proprietors cannot, therefore, estop the defendant, unless they are to be considered his own acts, or the acts of some one under whom he claims; and for this purpose it must at least appear, that he, as a proprietor, or those under whom he claims, personally aided in, and approved of the proceedings, or have recognized those proceedings by some act since, exclusively applicable to that which involved the *title* of the proprietors.    If the proprietors are empowered to divide into severalty, and not to decide the question of title, that which furnishes evidence of an acquiescence, if it can consistently be confined to such acts as may by the proprietors be legitimately performed, can never be construed to extend to such as may not.    It appears from the case, that this di

*Rutland,*
*January,*
*1824.*

*Smith et al.*
*vs*
*Meacham.*

vision of the proprietors has ever been acquiesced in, and the lands in the town are still holden under it; but it does not appear that John Smith was a proprietor. As no right is claimed by possession, the effect of this acquiescence, &c. must be confined to the severance, and the extent of all that could be claimed would be applicable to a case, in which a proprietor had accepted and taken possession of a lot, voted to him in lieu of his draft. The case shows the defendant claims title to the 80 acre lot by deed from the person to whom it was voted at the same time the 60 acre lot was set to Smith. If it is conceded, that, by deed poll and taking possession, the grantee can in any case be estopped, it is not perceived how the taking of the deed, and the claim under it, by the defendant, of the 80 acres, will estop him from denying the plaintiffs' right to the 60 acres or any other land. The defendant showed no other evidence of title than the deed of Mead; and none need have been shown as against the plaintiffs. It does not appear, whether Mead was, or was not the owner of the original right of Melvin; nor does it appear that the defendant claimed title by force of the vote of the proprietors. The extent of all that can be inferred from the case stated is, that he recognized the division & allotment. There is no reference in the deed to any records or proceedings of the proprietors; nor any recital of any right of Smith, by which the defendant is estopped, unless the reference in describing the boundaries should have that effect. But this surely cannot; it is but a supposal, and is generally immaterial even between the parties to the deed. Suppose there is a mistake as to the title of the person described as proprietor of the adjoining lot; there can be no authority or reason shown, wherefore the parties to this deed, or either of them, should be estopped from questioning the title of the person named, or should be prevented from holding such adjoining lot, by purchase thereafter from the real owner, against the person named as owner.

Therefore the Court consider in this case, that nothing short of evidence of title in the plaintiffs from the original proprietors, of fifteen years' peaceable possession, or of a prior actual possession (the defendant being a stranger, having shown no colour of right) could have availed the plaintiffs; but they having failed of showing either, judgment must be rendered on the verdict.